1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   United States of America and State of        No.  2:12-cv-02218-TLN-CKD
     California, *ex rel.* Douglas Dalitz and
12   Randy Gray,

13                    Plaintiffs and Relators,     **ORDER DENYING DEFENDANTS'**
                                                   **MOTION TO DISMISS**
14         V.

15   Amsurg Corp.; Gastroenterology
     Associates Endoscopy Center, LLC;
16   Redding Gastroenterology, LLC d/b/a
     Redding Endoscopy Center; Gaddam
17   Naresh Reddy, M.D.; Piyush Kumar
     Dhanuka, M.D.; and B. Nicholas Namihas,
18   M.D.

19                              Defendants.

20

21         This matter is before the Court pursuant to Defendants' AmSurg Corporation

22   ("AmSurg"); Gastroenterology Associates Endoscopy Center, L.L.C. ("GAEC"); Redding

23   Gastroenterology L.L.C. d/b/a Redding Endoscopy Center ("REC"); Gaddam Naresh Reddy,

24   M.D. ("Reddy"); Piyush Kumar Dhanuka, M.D. ("Dhanuka"); and B. Nicholas Nimhas, M.D.

25   ("Nimhas") (collectively "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint.

26   (ECF No. 35.)  Plaintiffs and *qui tam* Relators Douglas Dalitz ("Dalitz") and Randy Gray

27   ("Gray") (collectively "Plaintiffs") filed an Opposition to Defendants' motion.  (ECF No. 38.)

28   The Court has carefully considered the arguments raised in Defendants' motion and reply, as well

                                          1

1  as Plaintiffs' opposition.  For the reasons set forth below, Defendants' Motion to Dismiss is

2  DENIED.

3                    **I.  FACTUAL BACKGROUND**

4          Plaintiffs bring this suit against Defendants for false certification under the Federal False

5  Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)–(2), and California False Claims Act ("CFCA"),

6  Cal. Gov. Code § 12651(a)(1)–(2); conspiracy under the Federal False Claims Act, 31 U.S.C. §

7  3729(a)(3), and California False Claims Act, Cal. Gov. Code § 12651(a)(3); and retaliation in

8  violation of the Federal False Claims Act, 31 U.S.C. § 3730(h), and the California Whistleblower

9  Law, Cal. Labor Code § 1102.5.

10          Defendant AmSurg is a for-profit corporation based in Tennessee that provides

11  management services to ambulatory surgery centers ("ASCs").[1]  (Amended Complaint, ECF No.

12  23 at ¶ 9.)  Defendants Reddy, Dhanuka, and Namihas (collectively "REC Physicians") are

13  surgeons specializing in Gastroenterology.  (ECF No. 23 at ¶¶ 12–14.)  Defendants REC

14  Physicians and AmSurg own Defendants GAEC and REC as joint ventures in California.  (ECF

15  No. 23 at ¶¶ 10–11.)

16          Plaintiffs worked at REC as Certified Registered Nurse Anesthetists ("CRNAs").  (ECF

17  No. 23 at ¶¶ 2–5.)  The Center employed Dalitz from September 27, 2010, to December 17, 2010,

18  and Gray from around November 1, 2010, to December 17, 2010.  Plaintiffs were responsible for

19  reviewing pre-surgical assessments and providing anesthesia to patients.  (ECF No. 23 at ¶ 7.)

20               **a.  Medicare Program**

21          To be a Medicare provider and receive payments from Medicare, an ASC must enter into

22  an agreement with the Centers for Medicare and Medicaid ("CMS") and meet the conditions in

23  Part 416 of the Code of Federal Regulations.  (ECF No. 23 at ¶ 23.)  Pursuant to 42 C.F.R. §

24  416.42(a) and 42 C.F.R. § 416.52(a), providers must perform and place in the patient's record: 1)

25  a medical history and physical assessment ("H&P"); 2) pre-surgical assessment; and 3) anesthetic

26  risk assessment on patients before surgery.[2]  (ECF No. 23 at ¶ 24.)

27  ---

[1] The factual allegations in this section are taken from Plaintiffs' Amended Complaint.  For the purposes of a motion
28  to dismiss, the factual allegations in the complaint are accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).
[2] Plaintiffs additionally cite to a CMS memorandum, a CMS manual, American Society of Anesthesiologists

Plaintiffs state that during their employment REC Physicians either did not perform the H&Ps and pre-surgical assessments, or performed them in such a cursory manner that Plaintiffs did not have adequate information to properly assess whether the patient was fit to receive anesthesia or undergo surgical procedures.  (ECF No. 23 at ¶ 43.)  In addition, Plaintiffs allege that REC Physicians did not properly acquire and place patients' H&Ps in their medical records.  (ECF No. 23 at ¶ 45.)

### b. Plaintiffs' Reporting

On around September 27, 2010, Dalitz raised concerns regarding the REC Physicians' failure to perform pre-surgical assessments and comprehensive H&Ps to the office manager of REC.  (ECF No. 23 at ¶ 48.)  Per the office manager's instruction, Dalitz brought the issue up at a staff meeting where the office manager, REC Physicians, and AmSurg's Regional Vice President agreed to resolve the issue as soon as possible.  (ECF No. 23 at ¶ 49.)

Gray also brought his concerns regarding the REC Physicians' failure to perform pre-surgical assessments and comprehensive H&Ps to REC's office manager, REC Physicians, and AmSurg's Regional Vice President on "multiple occasions."  (ECF No. 23 at ¶ 55.)  They assured Gray they would take corrective action.  Plaintiffs allege that no corrective action was taken despite their complaints.  (ECF No. 23 at ¶ 57.)

Plaintiffs' Amended Complaint provided four examples of REC Physicians' failure to perform comprehensive H&Ps and pre-surgical assessments.  Patient A was scheduled for a colonoscopy with Namihas around November or December 2010. (ECF No. 23 at ¶ 50.)  Namihas had not performed a comprehensive H&P on Patient A before surgery.  However, Dalitz evaluated Patient A himself, and determined Patient A should not be treated in an ASC.  After Dalitz informed Nahimas that he would not administer anesthesia to Patient A, Nahimas stated "we did the prep, and that's what we're paying you for."  Namihas proceeded with the colonoscopy without anesthetizing the patient.  (ECF No. 23 at ¶ 50.)

On April 22, 2011, Reddy performed a colonoscopy on Patient B.  Patient B's record

standards, and American Association of Nurse Anesthetist standards of care. The Court finds it sufficient to focus on Defendants' violations of Federal regulations for the purposes of this motion and does not consider these additional sources at this time.  (ECF No. 23 at ¶ 27.)

1   shows Reddy signed the patient's H&P at 7:42 a.m.  (ECF No. 23 at ¶ 51.)  However, Patient B's

2   procedure began at 6:51 a.m.  That same morning, Reddy performed a colonoscopy on Patient C.

3   Reddy signed Patient C's H&P at 7:45 am, and started Patient C's procedure at 7:45 am.  (ECF

4   No. 23 at ¶ 51.)  Contrary to CMS guidelines, Reddy performed Patient B's H&P after his

5   surgery, and could not have performed a comprehensive H&P for Patient C given the brief

6   amount of time between Patient B and Patient C's procedures.  (ECF No. 23 at ¶ 51.)

7           Patient D was scheduled for an endoscopy and colonoscopy with Reddy around December

8   2, 2010.  Reddy did not perform a comprehensive H&P or pre-surgical assessment on Patient D.

9   (ECF No. 23 at ¶ 56.)  Patient D informed Gray he had been to the emergency room the night

10  before for heart palpitations. Gray expressed his concern for going forward with the procedure,

11  but Reddy insisted that Gray administer the anesthesia prior to the surgery.  (ECF No. 23 at ¶ 56.)

12  Once Gray administered the anesthesia to Patient D, Patient D experienced a sudden onset of

13  profound bradycardia.  (ECF No. 23 at ¶ 56.)  Reddy had to immediately stop the procedure.

14                    **c.  Termination of Employment**

15          Plaintiffs attended a final meeting with AmSurg management around December 13, 2010.

16  (ECF No. 23 at ¶ 57.)  Gray again expressed concerns that REC was not complying with

17  Medicare regulations.  On December 17, 2010, Plaintiffs received letters informing them that

18  REC had terminated their employment.

19              **II.  STANDARD OF LAW**

20          Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

21  statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

22  U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

23  defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic*

24  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

25  pleading standard relies on liberal discovery rules and summary judgment motions to define

26  disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

27  534 U.S. 506, 512 (2002).

28          On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

1   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

2   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

3   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

4   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

5   relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

6   factual content that allows the court to draw the reasonable inference that the defendant is liable

7   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

8       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

9   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

10  1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

11  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

12  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

13  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

14  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

15  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

16  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

17  been alleged[.]"  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

18  459 U.S. 519, 526 (1983).

19      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

20  facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 697 (quoting

21  *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

22  the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While

23  the plausibility requirement is not akin to a probability requirement, it demands more than "a

24  sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a

25  context-specific task that requires the reviewing court to draw on its judicial experience and

26  common sense."  *Id.* at 679.

27      In ruling upon a motion to dismiss, the court may consider only the complaint, any

28  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

5

1    Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

2    *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

3    1998).

4          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

5    amend even if no request to amend the pleading was made, unless it determines that the pleading

6    could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

7    1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

8    *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

9    denying leave to amend when amendment would be futile).  Although a district court should

10   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

11   deny such leave is 'particularly broad' where the plaintiff has previously amended its

12   complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

13   2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

14          **III. ANALYSIS**

15          a.  <u>False Certification of Claims under Federal and State False Claims Acts (Count I)</u>

16          Plaintiffs seek to bring an action against Defendants for false certification of claims in

17   violation of Federal and State False Claims Acts.  (ECF No. 23 at ¶ 80.)  The Court finds

18   Plaintiffs have properly stated these claims and DENIES Defendants' Motion to Dismiss Count I.

19          *i.  Sufficient Pleading of Routine False Certification*

20          First, Defendants contend Plaintiffs' allegations fail to meet the particularity standards of

21   Rule 9(b).  (ECF No. 35-2 at 13.)  Rule 9(b) provides that a party must plead fraud with

22   particularity.  With respect to the FCA, Plaintiffs must "state with particularity the circumstances

23   constituting fraud or mistake," including "the who, what, when, where, and how of the

24   misconduct charged," as well as "what is false or misleading about a statement, and why it is

25   false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Plaintiffs are required to

26   "provide enough detail to give [defendants] notice of the particular misconduct which is alleged

27   to constitute the fraud charged so that [they] can defend against the charge and not just deny that

28   [they have] done anything wrong." *Id.* at 999 (internal quotation marks omitted).

1    Defendants argue that Plaintiffs have failed to identify any claims submitted to a

2    government payer or to provide reliable indicia leading to a strong inference that claims were

3    actually submitted.  (ECF No. 35-2 at 14–15.)  Defendants argue that Plaintiffs simply assume

4    comprehensive H&Ps and pre-surgical assessments were not completed, that Patients A, B, C,

5    and D were Medicare or Medi-Cal beneficiaries, and that claims were submitted for these

6    procedures on behalf of the beneficiaries.  (ECF No. 35-2 at 16.)

7    This Court is unpersuaded by Defendants' arguments.  Plaintiffs discuss the "who, what,

8    when, where, and how" of incidents involving Patients A, B, C, and D in the Amended

9    Complaint.  (ECF No. 23 at ¶¶ 50–56.)  Moreover, Plaintiffs stated they observed REC

10   Physicians routinely failing to perform comprehensive H&Ps and pre-surgical assessments at

11   REC.  (ECF No. 23 at ¶¶ 47, 53.)  In doing so, Plaintiffs plead their claims with "sufficient

12   particularity to lead to a strong inference that false claims were actually submitted." *Frazier ex*

13   *rel. U.S. v. Iasis Healthcare Corp.*, 392 F. App'x 535, 537 (9th Cir. 2010)

14   Additionally, Defendants argue Plaintiffs have not established that any claims were

15   actually submitted to a government payer.  (ECF No. 35-2 at 15.)  At the pleading stage, Plaintiffs

16   must simply allege enough facts giving rise to a reasonable expectation that discovery will reveal

17   evidence of the submitted claims.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

18   It is Defendants, not Plaintiffs, who have access to these billing records.  Therefore, it is not

19   Plaintiffs' burden to provide evidence that might only be encountered through the process of

20   discovery.  Thus Plaintiffs have sufficiently met 9(b) pleading standards in their allegations.

21       *ii.   Pleading of Elements under the Federal and California False Claims Acts*

22   Second, Defendants argue Plaintiffs fail to identify any false claims or statements material

23   to a government payment.  Because Plaintiffs are not able to satisfy the materiality requirement,

24   Defendants contend Plaintiffs have not properly stated a claim under the Federal or State False

25   Claims Act.

26   Congress enacted the Federal False Claims Act ("FCA") in 1863.  *United States v.*

27   *McNinch*, 356 U.S. 595, 602 n.2 (1958) (Douglas, J., concurring in part and dissenting in part).

28   In 1986, Congress amended the Act to discourage fraud against the government in the fields of

1   defense and health care. *See* S. Rep. No. 99-345, at 2-4, 8 (1986), *reprinted in* 1986

2   U.S.C.C.A.N. 5266, 5267-69, 5273. The law includes a *qui tam* provision that allows private

3   individuals, called "relators" (informally "whistleblowers"), to file actions on behalf of the

4   government. *See Mikes v. Straus*, 274 F.3d 687, 692 (2d Cir. 2001).

5          California enacted its own False Claims Act ("CFCA") in 1987. *See* Cal. Gov. Code §

6   12650 *et seq.* Courts rely on FCA precedent to interpret the CFCA. *See San Francisco Unified*

7   *Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 224 Cal. App. 4th 627, 637 (2014); *State v.*

8   *Altus Fin., S.A.*, 36 Cal. 4th 1284, 1299 (2005) ("the CFCA 'is patterned on similar federal

9   legislation' and it is appropriate to look to precedent construing the equivalent federal FCA");

10  *City of Pomona v. Superior Court*, 89 Cal.App.4th 793, 802 (2001). FCA cases are authoritative

11  in construing the CFCA to the extent the language of the two acts are similar. *See Fassberg*

12  *Const. Co. v. Hous. Authority of Los Angeles*, 152 Cal.App.4th 720, 735 (2007). The language in

13  the sections of the FCA and CFCA supporting the false certification and conspiracy claims are

14  nearly identical.[3] As such, the Court will address the FCA claims here and apply its analysis to

15  the CFCA claims.

16         A claim of a FCA violation requires: (1) a false statement or fraudulent course of conduct

17  (2) that the defendant knew was fraudulent, (3) and was material, causing (4) the government to

18  pay out money or forfeit moneys due. *See U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d

19  1166, 1168 (9th Cir. 2006). The false statement or course of conduct must be material to the

20  government's decision to pay out money to the claimant. *Id.* at 1172.

21         In *Ebeid ex rel. U.S. v. Lungwitz*, the Ninth Circuit adopted the implied false certification

22  theory from the Second Circuit Medicare case *Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001).

23

24  [3] The Federal False Claims Act makes liable any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false

25  record or statement material to a false or fraudulent claim; and (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G). 31 U.S.C. § 3729(a)(1)(A)-(C).

26  The California False Claims Act makes liable any person who (1) knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used a false

27  record or statement material to a false or fraudulent claim; and (3) conspires to commit a violation of the subdivision. Cal. Gov. Code § 12651(a)(1)–(3).

28

1    *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 996–97 (9th Cir. 2010).  Implied certification is

2    based on the notion that claims for payment submitted to the government represent an implied

3    certification of a defendant's continuing adherence to program requirements.  *Id* at 996.  An entity

4    is thus liable for previously undertaking to expressly comply with a law, rule, or regulation, even

5    though a certification of compliance with that law, rule, or regulation is not actually required in

6    submitting each individual claim for payment.  *Id.* at 998.  The defendant's noncompliance

7    renders the claims "false," and liability attaches under the FCA.  Therefore, an entity can be liable

8    for false certification even if it does not expressly certify compliance in seeking a claim for

9    payment.

10        The *Mikes v. Straus* court imposes a further requirement on FCA violation claims: the

11    condition violated must be a condition of payment rather than a condition of participation.  *See*

12    *Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001).  While there is no definitive way to distinguish

13    between what constitutes a condition of payment vs. participation,[4] *Mikes* describes conditions of

14    payment as "prerequisites to receiving reimbursement."  *See id.* at 701–02.  The Ninth Circuit has

15    not clearly adopted the participation-payment differentiation set forth in *Mikes*.  *Compare*

16    *Hendow*, 461 F.3d at 1176-78 (holding that the distinction between a condition of participation

17    and a condition of payment was a "distinction without difference" and replying to apply the

18    analysis offered in *Mikes*) *and Ebeid*, 616 F.3d at 997–99 (finding that the "participation-payment

19    differentiation set forth in *Mikes* was limited to the Medicare context").  However, this Court

20    finds that Plaintiffs' complaint would meet the requirements of both the implied certification

21    theory and the condition of payment distinction, should it apply.  Therefore, the Court does not

22    reach the issue of whether the condition of payment distinction applies in this case.

23        To enroll as providers in Medicare, Defendants signed Medicare Form CMS-855B ("Form

24    855-B"), by which they agreed to follow the requirements of Medicare statutes, regulations, and

25    rules.  (ECF No. 38 at 3.)  The form includes Section 15, a "certification statement" that states:

         I agree to abide by the Medicare laws, regulations and program instructions that

26

27    _____

      [4] Benjamin A. Dacin, *Legal Materiality and the Implied Certification Theory of the False Claims Act: Why Courts Have Rejected the Traditional Standards of Materiality in Favor of A Precondition to Payment Requirement*, 17 Mich. St. U. J. Med. & L. 31, 46 (2012).

28

1  apply to this supplier. The Medicare laws, regulations, and program instructions
2  are available through the Medicare contractor. I understand that payment of a
   claim by Medicare is conditioned upon the claim and the underlying transaction
3  complying with such laws, regulations, and program instructions (including, but
   not limited to, the Federal anti-kickback statute and the Stark law), and on the
4  supplier's compliance with all applicable conditions of participation in Medicare.

5  Here, Defendants undertook an obligation to expressly comply with Medicare regulations

6  42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a).  Plaintiffs allege Defendants failed to comply

7  with these regulations.  Although Defendants were not required to submit an explicit certification

8  of compliance along with each claim for payment, the certification is implied in the language of

9  Form 855-B.  The form states Medicare payment is contingent upon Defendants' compliance with

10 "Medicare laws, regulations, and program instructions."  Thus, under the theory of implied

11 certification, Plaintiffs properly state a claim that Defendants violated the FCA.

12 Moreover, even if the *Mikes* condition of payment distinction was to apply, Plaintiffs

13 could argue the language in Form 855-B comprises a condition of payment rather than

14 participation.  The court in *Mikes* found that the disputed Medicare *regulation* could not present a

15 condition of payment and therefore dismissed the claim in favor of defendants.  *Mikes*, 274 F.3d

16 at 700.  However, here Plaintiffs do not rely on a Medicare regulation, but instead they argue that

17 Form 855-B provides the basis for their claim.  Because Form 855-B states, "I understand that

18 payment of a claim by Medicare is conditioned upon the claim and the underlying transaction

19 complying with such laws, regulations, and program instructions," Plaintiffs could successfully

20 argue that such language provides a condition for payment – meeting the requirements under

21 *Mikes*, should the Ninth Circuit find that the distinction applies.

22 Because Plaintiffs' claim meets the requirements of the implied certification theory, as

23 well as the condition for payment distinction, the Court DENIES Defendant's Motion to Dismiss

24 Count I.

25       b.  <u>Conspiracy to Submit False Claims in Violation of Federal and State False Claims</u>

26            <u>Acts  (Count II)</u>

27 Plaintiffs allege Defendants combined, conspired, and agreed together to defraud the

28 United States and the California Medi-Cal program.  (ECF No. 23 at ¶ 90.)  Defendants argue that

10

1   Plaintiff cannot plead conspiracy where Defendants are employees, agents, and/or alter egos of

2   one another.  (ECF No. 35 at 23.)  Plaintiffs respond in their opposition that they plead conspiracy

3   as an alternative theory of liability in the event that Defendants rely on their complicated

4   corporate structure to avoid liability.  (ECF No. 38 at 23.)  Defendants refuse to affirm or deny

5   they are agents of one another in their Reply to Plaintiffs' Opposition to the Motion to Dismiss.

6   (ECF No. 39 at 12.)  Defendants do not address Plaintiffs' argument that their conspiracy claim

7   presents an alternative theory of liability and the Court finds no reason why an alternative theory

8   may not be plead.  *Grosvenor Properties Ltd. v. Southmark Corp.*, 896 F.2d 1149, 1152 (9th Cir.

9   1990).  Therefore, so long as Defendants refuse to confirm that they are employees, agents,

10   partners, and/or alter egos of one another, Plaintiffs may plead a conspiracy claim in the

11   alternative.  This Court DENIES Defendants' Motion to Dismiss the conspiracy claims in Count

12   II.

13           c.  <u>Retaliation in Violation of Federal False Claims Act and California Whistleblower</u>

14               <u>Law (Count III)</u>

15               i.  *FCA Retaliation Claim*

16         A FCA retaliation claim requires proof of three elements: (1) the employee must have

17   been engaging in conduct protected under the Act; (2) the employer must have known that the

18   employee was engaging in such conduct; and (3) the employer must have discriminated against

19   the employee because of her protected conduct.  *Cafasso, U.S. ex rel. v. General Dynamics C4*

20   *Systems, Inc.*, 637 F.3d 1047, 1060 (9th Cir. 2011).  The focus of the claim is the employee's

21   protected action, such as investigating fraud, and whether the employer retaliated against the

22   employee because of that action.  *See Mendiondo v. Centinela Hosp. Medical Ctr.*, 521 F.3d

23   1097, 1103 (9th Cir. 2008).  An employee must in good faith, as a reasonable employee would in

24   similar circumstances, believe her employer is possibly committing fraud against the government.

25   *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 846 (9th Cir. 2002).

26         First, Defendants argue that Plaintiffs do not state a claim for retaliation under the FCA

27   because a reasonable employee in Plaintiffs' circumstances would not believe fraud was being

28   committed against the government.  (ECF No. 35-2 at 24.)  Here, Plaintiffs repeatedly

1   complained to management about its failure to perform comprehensive H&Ps and pre-surgical

2   evaluations.  (ECF No. 38 at 24.)  An employee in Plaintiffs' positions could have reasonably

3   believed REC Physicians were defrauding the government by failing to conduct, yet billing to

4   Medicare, the pre-surgical work required before procedures.  Plaintiffs could have reasonably

5   concluded Defendants were engaging in fraudulent billing practices against the government.

6   Therefore, Defendants' argument is unpersuasive.

7          Second, Defendants argue Plaintiffs fail to meet the employer knowledge element in a

8   FCA retaliation claim.  Defendants contend that because Plaintiffs did not raise their concerns

9   about Medicare or Medi-Cal fraud to their employers, Defendants were not aware that Plaintiffs

10  were even engaging in conduct protected by the FCA.  (ECF No. 35-2 at 24.)  However, Plaintiffs

11  point out that no "magic words" are necessary in bringing concerns about fraud to an employer.

12  (ECF No. 38 at 24 (citing *Mendiondo v. Centinela* Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

13  2008) and *Shaw v. AAA Eng'g & Drafting, Inc*., 213 F.3d 519, 528, 535 (10th Cir. 2000)).)  An

14  employee's complaints to management about "possible civil and criminal violations" are

15  sufficient to satisfy the second element of a FCA retaliation claim requiring that employers know

16  employees are engaging in protected conduct.  *Mendiondo*, 521 F.3d at 1104.  Plaintiffs'

17  Amended Complaint states that Plaintiffs repeatedly complained to management about failure to

18  perform legally compliant evaluations.  (ECF No. 23 ¶ 48–49, 53–55, 57.)  Therefore, the Court

19  DENIES Defendants' Motion to Dismiss the FCA retaliation claim in Count III.

20                        *ii.   State Retaliation Claim*

21         The California Whistleblower Law provides that an employer shall not retaliate against an

22  employee for "refusing to participate in an activity that would result in a violation of state or

23  federal statute, or a violation of or noncompliance with a local, state, or federal rule or

24  regulation."  Cal. Labor Code § 1102.5(c).  The California Supreme Court suggested in 2005 that

25  Plaintiffs are required to exhaust their administrative remedies before pursuing a claim for

26  retaliation under California's whistleblower protection laws.  *Campbell v. Regents of the Univ. of*

27  *California*, 35 Cal.4th 311, 328-29 (2005).  Defendants argue Plaintiffs' state law retaliation

28  claim fails because they did not exhaust their administrative remedies.  (ECF No. 35-2 at 25.)

1    However, as of January 1, 2014, the California Labor Code was amended to make clear

2    that a plaintiff is not required to exhaust administrative remedies prior to filing suit for Labor

3    Code violations.  *See* Cal. Labor Code § 244(a); *see also* § 98.7(g) ("In the enforcement of this

4    section, there is no requirement that an individual exhaust administrative remedies or

5    procedures.").  Moreover, the Ninth Circuit concluded these amendments apply retroactively to

6    render administrative exhaustion unnecessary for claims brought pursuant to section 1102.5.

7    *Reynolds v. City & Cnty. of San Francisco*, 576 F. App'x 698, 701 (9th Cir. 2014).

8    Accordingly, the Court finds Plaintiffs were not required to exhaust administrative

9    remedies prior to filing this action and declines to dismiss Plaintiffs' claims on this basis.  Thus,

10   the Court DENIES Defendants' Motion to Dismiss Count III.

11   IV. **CONCLUSION**

12   For the reasons set forth above, the Court hereby DENIES Defendants' Motion to Dismiss

13   Plaintiffs' Amended Complaint.  (ECF No. 35.)

14

15   IT IS SO ORDERED.

16   Dated:  December 23, 2014

17

18   _____

                              Troy L. Nunley
19                            United States District Judge

20

21

22

23

24

25

26

27

28

13