UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS DALITZ, et al., | No. 2:12-cv-2218-TLN-CKD |
| Plaintiffs, | |
| v. | ORDER |
| AMSURG CORP., et al., | |
| Defendants. | |

Plaintiffs Douglas Dalitz's and Randy Gray's ("relator plaintiffs") motion to compel discovery, ECF No. 72, came on regularly for hearing on December 9, 2015. Gary Callahan and Tatiana Filippova appeared for relator plaintiffs. Brian Roark and Robert Swanson appeared for defendants. Upon review of the documents in support of the motion, no opposition having been filed with regard to either, upon hearing the arguments of counsel, upon review of the joint statement regarding the parties' discovery disagreement, and good cause appearing therefor, THE COURT ORDERS AS FOLLOWS:

I.  Background

Generally stated, this is a *qui tam* action in which relator plaintiffs allege in their first amended complaint that defendants submitted false claims for medical billing under Medicare and Medi-Cal in violation of the federal and California False Claims Acts. More specifically, relator plaintiffs allege that defendants failed to perform medical assessments and obtain

comprehensive histories and physicals ("H&Ps"), which were required under Medicare's and Medi-Cal's reimbursement standards, before performing surgical procedures at Redding Endoscopy Center ("REC"), an ambulatory surgical center ("ASC") jointly owned and operated by defendants. The relator plaintiffs allege further that defendants knowingly made false certifications that they performed these prerequisites in order to obtain payment for their services from the federal and state government agencies administering Medicare and Medi-Cal, and engaged in a conspiracy to defraud by knowingly submitting the false claims. Finally, the relator plaintiffs allege that defendants terminated them from their employment at REC in retaliation for their attempts to rectify defendants' alleged fraudulent conduct.

II.     Relevant Discovery Standards

As of December 1, 2015, Federal Rule of Civil Procedure 26(b)(1) was amended to provide the following standards regarding the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Where—as here—a party resists discovery, the requesting party may file a motion to compel. Rule 37 governs motions to compel, and provides that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33" or "fails to respond" to a request under Rule 34. Before moving to compel, Rule 37 requires the movant to include a certification that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery before seeking judicial intervention. Fed. R. Civ. P. 37(a)(1). Generally, the party resisting discovery carries the burden of showing why discovery should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

The court has broad discretion in controlling discovery and in determining whether discovery is burdensome or oppressive. See Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir.

1988).  The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense.  United States v. Columbia Board. Sys., Inc., 666 F .2d 364, 369 (9th Cir. 1982) cert. denied, 457 U.S. 1118 (1982).

III.    Discussion

Relator plaintiffs' motion to compel presents two separate but related discovery issues for the court's consideration.  First, relator plaintiffs seek to compel defendants to produce discovery relating to all of the ASCs owned and operated by defendant AmSurg Corp. nationwide, while defendants contend that the geographic scope of discovery should be limited to defendants' actions at REC only.  Second, relator plaintiffs seek to compel discovery covering the period from January 1, 2008 through the present, while defendants argue that only discovery concerning the timeframe in which the relator plaintiffs were employed at REC is warranted.  The court will address each of these disputes in turn.

A.    *Geographic Scope of Discovery*

With respect to the geographic scope of discovery, relator plaintiffs argue that the allegations of their amended complaint demonstrate that their claims are national in scope, therefore necessitating discovery relating to all of the ASCs owned and operated by AmSurg Corp. nationwide.  Relator plaintiffs argue in the alternative that staged discovery initially limiting the geographic scope to AmSurg Corp.'s ASCs in California only would be appropriate and could diminish the burden that would be imposed by nationwide discovery.

The court finds that the factual allegations of the first amended complaint do not show that the scope of discovery to be produced by defendants should be expanded to cover all ASCs owned by AmSurg Corp. located nationwide, or even within the smaller geographic region of California.  Relator plaintiffs contend that allegations concerning AmSurg Corp.'s national directive to its ASCs to increase patient volume in order to drive revenues gives rise to a reasonable inference that similar fraudulent conduct was also being carried out at ASCs other than REC.  However, while it is conceivable that such a policy could have incentivized fraudulent behavior at AmSurg Corp.'s other ASCs similar to that alleged against defendants with regard to REC, the existence of such a policy, without more, does not create a plausible inference that

3

similar misconduct has occurred at those other centers.  A directive to increase the number of patients does not necessarily mean that AmSurg Corp. directed its ASCs to engage in the fraudulent practices alleged with regard to REC.  Indeed, such a directive may just as well have driven the other ASCs to increase patient volume through non-fraudulent means.  There are simply no other factual allegations in the first amended complaint that plausibly suggest that AmSurg Corp.'s national directive commanded the sort of fraud alleged against REC or otherwise led its other ASCs to commit similar violations.

The allegations of the first amended complaint fail to provide a factual basis for nationwide discovery as they do not plausibly indicate that the alleged fraudulent conduct has occurred outside of REC.  Relator plaintiffs' factual allegations focus entirely on defendants' activities at REC.  ECF No. 23 at 24-25.  While they also allege "that the conduct that the Relators observed during their employment with AmSurg represents the standard practice of the entire AmSurg corporate enterprise" and that "[o]ther ASCs controlled by AmSurg are committing the same type of conduct," id. at ¶¶ 82-83, there are no factual allegations in the first amended complaint that would plausibly support these conclusory allegations or otherwise indicate that AmSurg Corp.'s other ASCs engaged in the misconduct alleged with respect to REC.  Indeed, the fact that the first amended complaint alleges facts showing the submission of false claims from only a single ASC more strongly inplies that such practices were not widespread.  Cf. U.S. ex rel. Spay v. CVS Caremark Corp., 913 F. Supp. 2d 125, 177 (E.D. Pa. 2012) (finding that relator plaintiffs' allegations created "a strong inference that Defendants submitted false claims nationwide" because they identified a large number of false claims coming out of defendants' facilities "in at least three states and Puerto Rico").

In addition, the declaration of Deborah Miller filed in support of defendants' opposition to relator plaintiffs' motion to compel states that AmSurg Corp. does not engage in the clinical management or billing operations for its ASCs, which are handled either by the physicians or board of directors at each ASC.  Declaration of Deborah Miller, ECF No. 73-1, Exh. 10, ("Miller Decl.") at ¶ 8.   This indicates that the actual decisions regarding whether to obtain H&Ps or other required assessments prior to operating on patients and then to submit Medicare or Medi-Cal

billing claims for those operations is not dictated by AmSurg Corp.'s national directives, but by the individuals working locally at the individual ASC. This evidence, when taken into consideration with the allegations of the first amended complaint, strongly suggests that the fraud alleged against REC was only local to that center. Accordingly, relator plaintiffs fail to demonstrate that discovery relating to ASCs other than REC is relevant to their claims at this juncture.

Moreover, relator plaintiffs' request for discovery relating to AmSurg Corp.'s 246 ASCs nationwide, which are located in 34 different states, would be disproportionate to their discovery needs. Defendants show that there is no central nationwide database from which they can obtain the requested documents for each ASC. See Miller Decl. at ¶ 7. Therefore, permitting nationwide discovery would likely cause an extreme burden on defendants, who would have to conduct an individualized collection of relevant documents from each ASC. Defendants would be burdened even further given that they would need to carry out what would likely be a massive production effort before the fast-approaching February 4, 2016 fact discovery deadline currently in place in this action. See ECF No. 50.

Similarly, relator plaintiffs' alternative request for discovery regarding only California ASCs also is disproportionate to their needs for discovery concerning their claims. Defendants' Miller Declaration notes that AmSurg Corp.'s "Western Region" consists of 14 ASCs located in either California or Arizona. Miller Decl. at ¶ 3. While this presents a smaller geographic scope compared to relator plaintiffs' primary request for national discovery, it is still disproportionate to plaintiff's need for discovery relating to ASCs other than REC because relator plaintiffs' allegations are almost exclusively centered on defendants' actions involving REC. Furthermore, given the time constraints posed by the impending fact discovery deadline and the fact that each ASC maintains its own information separate from the others, it may not be reasonably feasible for defendants to produce this information in a timely manner.

The burden caused by the wide-ranging scope of discovery sought by relator plaintiffs and the fact that their allegations only indirectly relate to AmSurg Corp.'s national activities concerning the operation of its ASCs tips the balance in favor of the more limited geographic

1  scope advocated by defendants.  Accordingly, the court will deny relator plaintiffs' motion to
2  compel insofar as it seeks discovery related to AmSurg Corp.'s ASCs other than REC.
3      B.      *Temporal Scope of Discovery*
4  Defendants argue that the temporal scope of discovery should be limited to only the
5  period between September 1, 2010 and January 17, 2011, which was time when relator plaintiffs'
6  employment contracts with defendants were in effect.   However, the limitation of a relator's
7  discovery rights to only the duration of his or her employment contract would undermine the
8  purpose behind *qui tam* actions under the federal and California FCAs, which is to vindicate the
9  government's rights with regard to a defendant contractor's fraudulent activity.  Such a restraint
10 regarding the discoverable timeframe would place a limit on *qui tam* actions that do not exist for
11 government-initiated actions.  "Additionally, it would dissuade whistleblowing by limiting a
12 relator's claim, not to the plausible allegations regarding the submission of false claims—which is
13 the [FCA's] focus—but to the duration of the relator's employment, on which the [FCA] is
14 silent."  U.S. ex rel. Fiederer v. Healing Hearts Home Care, Inc., 2014 WL 4666531, at *5 (D.
15 Nev. Sept. 18, 2014).[1]  The mere fact that relator plaintiffs here allege that they worked for
16 defendants at REC for a limited period of time does not mean that their FCA claims are
17 necessarily limited in scope to only that time.  See U.S. ex rel. Walker, 433 F.3d at 1359
18 (reversing district court's discovery order limiting the scope discovery on FCA claim to the
19 relator plaintiff's term of employment with defendant because the relator plaintiff 's complaint
20 alleged that defendant engaged in fraudulent conduct prior to, during, and after that timeframe);
21 U.S. ex rel. Fiederer, 2014 WL 4666531, at *5 (finding defendants' argument that the scope of
22 discovery relating to FCA claim should be limited to the duration of the relator plaintiff's
23 employment to lack merit because such a limit "would weaken the [FCA] by placing limits on *qui*
24 *tam* actions that do not exist for government-initiated actions").

---

[1] Because the California False Claims Act]"is patterned on [the federal False Claims Act,] . . . it is appropriate to look to precedent construing the equivalent federal act."  State v. Altus Fin., S.A., 36 Cal. 4th 1284, 1299 (2005).

6

Furthermore, the allegations of the first amended complaint demonstrate that the scope of relator plaintiffs' claims concern fraudulent practices by defendants that occurred prior to, during, and after relator plaintiffs' employment at REC.  For example, paragraph 49 of the first amended complaint alleges that after relator plaintiffs raised the issue of defendants' failure to perform the required comprehensive H&Ps and pre-surgical assessments during a meeting in October of 2010, relator plaintiff Dalitz was pulled aside by Penny Workman, REC's office manager and Registered Nurse, who informed him that defendants had previously been cited by the State of California for failing to perform such assessments on a cardiac patient at REC.  ECF No. 23 at ¶ 49.  This allegation plausibly indicates that the alleged wrongful behavior occurred prior to the time relator plaintiffs were employed at REC.  The allegations of the amended complaint further indicate that the alleged fraudulent practice at REC began on or about December 5, 2008, when REC began to operate under AmSurg Corp.'s partial ownership.  ECF No. 23 at ¶¶ 9-18.

Also in paragraph 49, relator plaintiffs allege that the "REC Physicians and staff made no attempts to correct their procedures regarding the comprehensive H&P and pre-surgical assessment requirement" after relator plaintiffs had raised their concerns regarding non-compliance.  Id.  Relator plaintiffs then go on to allege that on December 13, 2010, just days before their employment with REC was terminated by defendants, they attended a meeting with some of the defendants and again informed them of the need to comply with the relevant regulations, but that "no resolution was reached."  Id. at ¶¶ 57-58.  These allegations plausibly demonstrate that the regulatory violations and fraudulent billing claims on which relator plaintiffs' claims are based continued to occur after the termination of their employment.

Relator plaintiffs request that an order compelling defendants to produce discovery encompassing the period from January 1, 2008 through the present.   However, relator plaintiffs fail to demonstrate why discovery dating back to January 1, 2008 is relevant to the claims at issue in this action.  As noted above, the court finds that the allegations of the first amended complaint plausibly indicate that defendants began to engage in the alleged fraudulent scheme beginning on December 5, 2008, the date on which REC began it operations under the majority ownership of AmSurg Corp.

1    Similarly, while relator plaintiffs' allegations plausibly demonstrate that defendants'
2 fraudulent activity continued after the expiration of relator plaintiffs' employment contracts, those
3 allegations do not warrant discovery concerning the time after August 27, 2012, the date on which
4 the original complaint was filed in this action.  Relator plaintiffs' allegations with regard to
5 defendants' actions at REC repeatedly refer to those actions in the past tense, strongly suggesting
6 that relator plaintiffs' claims are limited to the time frame prior to the date on which this action
7 was initiated.  See generally, ECF No. 23 at ¶¶ 42-61.  Accordingly, the period between the filing
8 date of the original complaint and the present does not appear to fall within the scope of relator
9 plaintiffs' allegations.  Therefore, the court finds that relator plaintiffs fail to demonstrate how the
10 discovery they request relating to the time after their complaint was filed is relevant to their
11 claims at issue in this matter.

12    For the foregoing reasons, the court determines that the proper temporal scope of
13 discovery relevant to the allegations of the first amended complaint is from December 5, 2008
14 through August 27, 2012.  Discovery covering such a period appears proportional to the needs of
15 this case.  As noted above, the complaint sets forth allegations pertaining to defendants'
16 fraudulent actions at REC that make the requested discovery concerning this timeframe
17 reasonably necessary to further relator plaintiffs' claims.  Furthermore, the parties note in their
18 joint statement concerning the present motion that defendants have already produced discovery
19 relating to REC for the timeframe encompassing relator plaintiffs' employment at that facility.
20 Accordingly, it appears that defendants would be able to produce similar discovery covering the
21 rest of the relevant timeframe without great difficulty or undue burden.  Therefore, the court finds
22 that relator plaintiffs are entitled to the requested discovery insofar as it concerns the period of
23 December 5, 2008 through August 27, 2012.
24 /////
25 /////
26 /////
27 /////
28 /////

IV. Conclusion

For the reasons discussed above, IT IS HEREBY ORDERED that relator plaintiffs' motion to compel, ECF No. 72, is granted in part:

1. With regard to the geographic scope of discovery, defendants shall supplement their responses to relator plaintiffs' discovery requests by producing any relevant and nonprivileged material concerning defendants' activities at REC. Relator Plaintiffs' motion to compel is denied insofar as it seeks discovery concerning AmSurg Corp.'s other ASCs and national or regional activities not directly relevant to plaintiff's allegations regarding defendants' activities at REC.

2. With regard to the temporal scope of discovery, defendants shall produce any relevant and nonprivileged discovery responsive to relator plaintiffs' discovery requests covering the period of December 5, 2008 through August 27, 2012.

Dated: December 14, 2015

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 dalitz2218.mtc