UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America and State of California, *ex rel.* Douglas Dalitz and Randy Gray,<br><br>　　　　　　　Plaintiffs and Relators,<br><br>　　v.<br><br>Amsurg Corp.; Gastroenterology Associates Endoscopy Center, LLC; Redding Gastroenterology, LLC d/b/a Redding Endoscopy Center; Gaddam Naresh Reddy, M.D.; Piyush Kumar Dhanuka, M.D.; and B. Nicholas Namihas, M.D.<br><br>　　　　　　　Defendants. | No.  2:12-cv-02218-TLN-CKD<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION** |

　　　　This matter is before the Court pursuant to Defendants' AmSurg Corporation ("AmSurg"); Gastroenterology Associates Endoscopy Center, L.L.C. ("GAEC"); Redding Gastroenterology L.L.C. d/b/a Redding Endoscopy Center ("REC"); Gaddam Naresh Reddy, M.D. ("Reddy"); Piyush Kumar Dhanuka, M.D. ("Dhanuka"); and B. Nicholas Nimhas, M.D. ("Nimhas") (collectively "Defendants") Motion for Partial Reconsideration or, alternatively, Certification of Interlocutory Appeal of this Court's Order Denying Defendants' Motion to Dismiss as to Counts I and II.  (ECF No. 46.)[1]  Plaintiffs and *qui tam* Relators Douglas Dalitz

---
[1] On March 25, 2014, Defendants filed a motion to dismiss all three counts of Plaintiffs' first amended complaint

1

("Dalitz") and Randy Gray ("Gray") (collectively "Plaintiffs") filed an Opposition to Defendants' motion. (ECF No. 47.) The Court has carefully considered the arguments raised in Defendants' motion and reply, as well as Plaintiffs' opposition. For the reasons set forth below, Defendants' Motion for Reconsideration is DENIED.

## I.    FACTUAL BACKGROUND [2]

Plaintiffs bring this suit against Defendants for false certification under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)–(2), and California False Claims Act ("CFCA"), Cal. Gov. Code § 12651(a)(1)–(2); conspiracy under the Federal False Claims Act, 31 U.S.C. § 3729(a)(3), and California False Claims Act, Cal. Gov. Code § 12651(a)(3); and retaliation in violation of the Federal False Claims Act, 31 U.S.C. § 3730(h), and the California Whistleblower Law, Cal. Labor Code § 1102.5.

Defendant AmSurg is a for-profit corporation based in Tennessee that provides management services to ambulatory surgery centers ("ASCs").[3] (Amended Complaint, ECF No. 23 at ¶ 9.) Defendants Reddy, Dhanuka, and Namihas (collectively "REC Physicians") are surgeons specializing in Gastroenterology. (ECF No. 23 at ¶¶ 12–14.) Defendants AmSurg and REC Physicians own Defendants GAEC and REC as joint ventures in California. (ECF No. 23 at ¶¶ 10–11.)

Plaintiffs worked at REC as Certified Registered Nurse Anesthetists ("CRNAs"). (ECF No. 23 at ¶¶ 2–5.) The Center employed Dalitz from September 27, 2010, to December 17, 2010, and Gray from around November 1, 2010, to December 17, 2010. Plaintiffs were responsible for reviewing pre-surgical assessments and providing anesthesia to patients. (ECF No. 23 at ¶ 7.)

### A.    Medicare Program

To be a Medicare provider and receive payments from Medicare, an ASC must enter into an agreement with the Centers for Medicare and Medicaid ("CMS") and meet the conditions in Part 416 of the Code of Federal Regulations. (ECF No. 23 at ¶ 23.) Pursuant to 42 C.F.R. §

---

("FAC"). (ECF No. 35.) The Court denied Defendants' motion as to all counts. (ECF No. 41.)
[2] Because there have been no changes to the facts of the case, the Court recounts the factual background exactly as provided in its Order on Defendants' motion to dismiss. (ECF No. 41).
[3] The factual allegations in this section are taken from Plaintiffs' Amended Complaint. For the purposes of a motion to dismiss, the factual allegations in the complaint are accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

416.42(a) and 42 C.F.R. § 416.52(a), providers must perform and place in the patient's record: 1) a medical history and physical assessment ("H&P"); 2) pre-surgical assessment; and 3) anesthetic risk assessment on patients before surgery.[4]  (ECF No. 23 at ¶ 24.)

Plaintiffs state that during their employment REC Physicians either did not perform the H&Ps and pre-surgical assessments, or performed them in such a cursory manner that Plaintiffs did not have adequate information to properly assess whether the patient was fit to receive anesthesia or undergo surgical procedures.  (ECF No. 23 at ¶ 43.)  In addition, Plaintiffs allege that REC Physicians did not properly acquire and place patients' H&Ps in their medical records. (ECF No. 23 at ¶ 45.)

### B.  Plaintiffs' Reporting

On around September 27, 2010, Dalitz raised concerns regarding the REC Physicians' failure to perform pre-surgical assessments and comprehensive H&Ps to the office manager of REC.  (ECF No. 23 at ¶ 48.)  Per the office manager's instruction, Dalitz brought the issue up at a staff meeting where the office manager, REC Physicians, and AmSurg's Regional Vice President agreed to resolve the issue as soon as possible.  (ECF No. 23 at ¶ 49.)

Gray also brought his concerns regarding the REC Physicians' failure to perform pre-surgical assessments and comprehensive H&Ps to REC's office manager, REC Physicians, and AmSurg's Regional Vice President on "multiple occasions."  (ECF No. 23 at ¶ 55.)  They assured Gray they would take corrective action.  Plaintiffs allege that no corrective action was taken despite their complaints.  (ECF No. 23 at ¶ 57.)

Plaintiffs' Amended Complaint provided four examples of REC Physicians' failure to perform comprehensive H&Ps and pre-surgical assessments.  Patient A was scheduled for a colonoscopy with Namihas around November or December 2010. (ECF No. 23 at ¶ 50.)  Namihas had not performed a comprehensive H&P on Patient A before surgery.  However, Dalitz evaluated Patient A himself, and determined Patient A should not be treated in an ASC.  After

---

[4] Plaintiffs additionally cite to a CMS memorandum, a CMS manual, American Society of Anesthesiologists standards, and American Association of Nurse Anesthetist standards of care. The Court finds it sufficient to focus on Defendants' violations of Federal regulations for the purposes of this motion and does not consider these additional sources at this time. (ECF No. 23 at ¶ 27.)

3

Dalitz informed Nahimas that he would not administer anesthesia to Patient A, Nahimas stated "we did the prep, and that's what we're paying you for." Namihas proceeded with the colonoscopy without anesthetizing the patient. (ECF No. 23 at ¶ 50.)

On April 22, 2011, Reddy performed a colonoscopy on Patient B. Patient B's record shows Reddy signed the patient's H&P at 7:42 a.m. (ECF No. 23 at ¶ 51.) However, Patient B's procedure began at 6:51 a.m. That same morning, Reddy performed a colonoscopy on Patient C. Reddy signed Patient C's H&P at 7:45 am, and started Patient C's procedure at 7:45 am. (ECF No. 23 at ¶ 51.) Contrary to CMS guidelines, Reddy performed Patient B's H&P after his surgery, and could not have performed a comprehensive H&P for Patient C given the brief amount of time between Patient B and Patient C's procedures. (ECF No. 23 at ¶ 51.)

Patient D was scheduled for an endoscopy and colonoscopy with Reddy around December 2, 2010. Reddy did not perform a comprehensive H&P or pre-surgical assessment on Patient D. (ECF No. 23 at ¶ 56.) Patient D informed Gray he had been to the emergency room the night before for heart palpitations. Gray expressed his concern for going forward with the procedure, but Reddy insisted that Gray administer the anesthesia prior to the surgery. (ECF No. 23 at ¶ 56.) Once Gray administered the anesthesia to Patient D, Patient D experienced a sudden onset of profound bradycardia. (ECF No. 23 at ¶ 56.) Reddy had to immediately stop the procedure.

        C.    Termination of Employment

Plaintiffs attended a final meeting with AmSurg management around December 13, 2010. (ECF No. 23 at ¶ 57.) Gray again expressed concerns that REC was not complying with Medicare regulations. On December 17, 2010, Plaintiffs received letters informing them that REC had terminated their employment.

    **II.**    **STANDARD OF LAW**

        A.    Reconsideration

"If a motion for reconsideration is filed within 28 days of an order on a motion to dismiss, the court will treat the motion as a [Federal Rule of Civil Procedure] 59(e) motion [("Rule 56(e)")]." *Kouretas v. Nationstar Mortgage Holdings, Inc.*, No. 2:13-CV-02632-MCE, 2015 WL 3541196, at *3 (E.D. Cal. June 4, 2015) (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th

4

Cir.2007)). Under Rule 59(e), reconsideration is unwarranted in the ordinary case. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citations omitted); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School District No. 1J, Multnomah County, Oregon v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* E.D. Cal. Local Rule 230(j) (stating that a party seeking reconsideration must show what "new or different facts or circumstances" which were not previously shown "or what other grounds exist for the motion"). As such, a mere "attempt to reargue the case is not grounds for granting a motion for reconsideration." *Kodimer v. Cnty. of San Diego*, No. 07–CV–2221–BEN (NLS), 2010 WL 2926493, at *1 (S.D.Cal. July 22, 2010) (citing *American Ironworks*, 248 F.3d at 899).

### B. Certification of Order for Interlocutory Appeal

"Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025–26 (9th Cir.1982). "As Section 1292(b) is a departure from the general rule that only final judgments are appealable, it 'therefore must be construed narrowly.'" *Zone Sports Ctr., LLC v. Rodriguez*, No. 1:11–cv–00622–SKO, 2013 WL 3766749, at *4 (E.D. Cal. July 16, 2013) (quoting *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n. 6 (9th Cir. 2002)). Thus, interlocutory appeal should only be used in exceptional situations, where the use of an interlocutory appeal "would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. "The party seeking review [has] the burden of showing that 'exceptional circumstances justify a departure of the basic policy of postponing appellate review until after the entry of a final judgment.'" *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F.Supp.2d 1081, 1087 (E.D. Cal. 2008) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

/ / /

**III.  ANALYSIS**

      A.  <u>Reconsideration under Rule 59(e)</u>

          *i.  Interpretation of Applicable Case Law*

In its Order, the Court found that Plaintiffs properly pleaded their claims of false certification under federal law, the False Claims Act ("FCA"), and related state laws (Count I) and conspiracy to submit false claims (Count II). (ECF No. 41.) Count II is built on identical facts and legal argument as Count I, but is plead in the alternative due to a lack of clarity as to the corporate structure of the Defendants. (ECF No. 23 at ¶¶ 88–90.) Because the two counts are identical for the purposes of this motion, which challenges the legal basis underlying both claims, the Court will address both counts simultaneously.

In reaching its decision, the Court relied on *Ebeid ex rel.U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) in finding that Plaintiffs were entitled to plead false certification under the theory of implied, rather than express, certification. (ECF No. 41 at 8–9.) Under implied certification, the Court reasoned, an entity is "liable for previously undertaking to expressly comply with the law, rule, or regulation, even though a certification of compliance with that law, rule, or regulation is not actually required in submitting each individual claim for payment." (ECF No. 41 at 9.) The Court further noted that, although the Ninth Circuit has not offered a definitive ruling on the issue, some courts have indicated that not only does the condition violated need to be material, as required by the elements in a false certification claim, but must also be a condition of payment, rather than simply a condition of participation. (ECF No. 41 at 9.) The Court found the proposed regulations, 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a), to be both material and conditions of payment, should the Ninth Circuit determine that such a distinction applies. (ECF No. 41 at 9–10.) On those grounds, the Court found that Plaintiffs' false certification claims, Counts I and II, survived Defendants' motion to dismiss.

Defendants pick apart the Court's legal reasoning on a number of grounds, and the Court will address each in turn. However, generally, Defendants argue that this Court committed a clear error in its analysis of the applicable case law by holding that certification of CMS 855-B was sufficient to support Plaintiffs' claims and by holding that 42 C.F.R. § 416.42(a) and 42

1  C.F.R. § 416.52(a) were material and/or conditions of payment under the law.  (Mem. in Supp. of
2  Dft.'s Mot. for Reconsideration, ECF No. 46-1 at 6.)  Defendants' arguments do not rise to the
3  level sufficient to demonstrate a clear error of the law and therefore the Court must deny
4  Defendants' motion for reconsideration.

                a.      Implied Certification through CMS-855B

6        In its challenged order, the Court ruled that, under the theory of implied certification,
7  Plaintiffs need only to establish that Defendants previously expressed their intent to comply with
8  the applicable regulations, not that Defendants falsely certified its compliance in each instance
9  that it submitted a claim for payment for those services.  (ECF No. 41 at 9 (citing *Ebeid*, 616 F.3d
10 at 996–97).)  The Court then found that Defendants' signature on CMS-855B, Section 15(A)(3),
11 constituted the requisite expression of intent to comply with 42 C.F.R. § 416.42(a) and 42 C.F.R.
12 § 416.52(a).  (ECF No. 41 at 10.)

13       Defendants protest this ruling on two grounds.  "Reconsideration is appropriate if the
14 district court (1) is presented with newly discovered evidence, (2) committed clear error or the
15 initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."
16 *School District No. 1J, Multnomah County, Oregon v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th
17 Cir.1993).  Defendants appear to argue for reconsideration only under the second ground,
18 asserting that the Court has committed a clear error of law.

19       First, Defendants argue that the Court cannot consider CMS-855B because it was not
20 referenced in the FAC and the motion to dismiss should have been "limited to the four corners of
21 the Amended Complaint, and the Court was not permitted to take into account new factual
22 allegations or theories of liability raised in the briefs."  (ECF No. 46-1 at 7.)  Defendants are
23 mistaken when they assert that the Court's reliance on CMS-855B constituted a new factual
24 allegation or theory of liability.  In their FAC, Plaintiffs indicated that Defendants entered into an
25 agreement as a Medicare provider by executing "CMS Form 855B." (First Amended Complaint,
26 ECF No. 23 at ¶ 23.)  Not only do Plaintiffs reference the form, but they go into detail regarding
27 the series of express provisions found within the form to which Defendants bound themselves in
28 signing the document.  (ECF No. 23 at ¶¶ 37–39, 80.)

While it is true that Plaintiffs failed to attach a copy of the form to their FAC, a court may consider documents external to the pleadings in a motion to dismiss under the incorporation by reference doctrine where the contents of the documents are alleged in the complaint and neither party questions the authenticity of the documents. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). CMS-855B is a standard form used in the Medicare context that is readily available on the internet. *See*, *e.g.*, "Medicare Enrollment Application, CMS-855B," https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms855B.pdf. Neither party disputes the authenticity of the form. Therefore, the Court may properly consider the CMS-855B under the incorporation by reference doctrine as an exhibit in support of the allegations put forth in the FAC. As such, there are no grounds for reconsideration of the Court's Order on this issue.

Second, Defendants argue that the CMS-855B cannot provide the requisite expression of intent to comply with 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) under the theory of implied certification. (ECF No. 46-1 at 9.) Defendants assert that the CMS-855B certification is too broad and that such a "catch-all" certification is not sufficient to confer liability. (ECF No. 46-1 at 9.) Adoption of such a sweeping certification, Defendants argue, "would transform the violation of *any* law, regulation, or program instruction into grounds for FCA liability which would read the FCA's materiality requirement out of existence." (ECF No. 46-1 at 9.) While Defendants' points are well taken, it remains that there is no controlling case law within the Ninth Circuit on this issue and the Court's interpretation does not constitute a clear error of law, as required under a motion for reconsideration.

"Rule 59(e) is intended to afford relief only in extraordinary circumstances, and not to routinely give litigants a second bite at the apple." *Van Derheydt v. Cty. of Placer*, 32 F. App'x 221, 223 (9th Cir. 2002). While Defendants are correct in citing many district courts within the Ninth Circuit that have adopted the view that a "catch-all certification" is insufficient certification to confer liability, those courts, by and large, rely on the ruling from *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211 (10th Cir. 2008.). *See, e.g.*, *USA v. Walgreen Co.*, No. 13-cv-08473-BRO (C.D. Cal. January 2, 2015) (unpublished) (attached to Defendants'

motion as Attachment 1). Rulings from the Tenth Circuit Court of Appeals are not binding on this Court. In *USA v. Walgreen, Co.*, for example, the Central District of California clearly states that "the Ninth Circuit has not addressed the issue of whether general language may support a false certification claim…." (ECF No. 46-1 at 29.)

In fact, the Ninth Circuit itself has instructed that the word "certification" does not have "some paramount and talismanic significance." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006). In *Hendow*, the Ninth Circuit court chided the parties for taking such a view, stating:

> [B]ecause the word 'certification' does not appear in [the FCA], there is no sense in parsing it with the close attention typically attending an exercise in statutory interpretation. So long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach.

*U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006). Other circuits have adopted this view. *See, e.g.*, *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 385-86 (1st Cir. 2011) (stating, "[j]udicially-created categories [of certification] sometimes can help carry out a statute's requirements, but they can also create artificial barriers that obscure and distort those requirements. … In light of this, and our view that these categories may do more to obscure than clarify the issues before us, we do not employ them here."). Therefore, the Court can properly conclude that the Ninth Circuit has offered no binding precedent on this issue and that the Court's decision not to follow the Tenth Circuit in deciding this matter does not amount to a clear error of law.

Defendants further argue that "every other court, including other California district courts, that has considered whether 'catch-all' certifications like the CMS-855B are sufficient … have rejected the proposition." (ECF No. 46-1 at 9.) However, Defendants statement is overzealous. For example, in *Maa v. Ostroff*, a court in the Northern District of California held that "the periodic application for participation in Medicare Part A and the annual hospital cost reports" may show sufficient certification to confer liability. *Maa v. Ostroff*, No. 12-CV-00200-JCS, 2013 WL 1703377, at *16 (N.D. Cal. Apr. 19, 2013) (finding only that Plaintiff failed to sufficiently allege that Defendants signed the referenced certifications). Similarly, in *US ex rel. Modglin v.*

*DJO Global, Inc*., the Central District of California determined that a signed Medical Enrollment Application "certified compliance with all applicable rules and regulations, and stated that defendants underst[oo]d that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions." *U.S. ex rel. Modglin v. DJO Glob. Inc*., 48 F. Supp. 3d 1362, 1403 (C.D. Cal. 2014) (internal citation omitted) (ultimately dismissing the claim due to plaintiff's failure to provide sufficient facts showing that defendant actually signed the Medicare Enrollment Form). While courts are certainly divided on this issue, this Court has not rejected any binding precedent in reaching its opinion. For those reasons, the Court cannot grant a motion for reconsideration on these grounds.[5]

          b. <u>Materiality of 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a)</u>

  Defendants argue that 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) may not form the basis of an FCA claim because the regulations at issue are not conditions of payment. (ECF No. 46-1 at 11.) Defendants cite to a variety of circuit and district court cases outside of the Ninth Circuit for the proposition that an FCA claim may only stand if the underlying law, rule, or regulation a plaintiff references is a condition of payment. (Def.'s Mot. to Dismiss, ECF No. 35-2 at 13–16.) Again, the Court finds that Defendants oversubscribe to the payment/participation distinction and fail to present any binding precedent to indicate that the Court's determination on this issue constitutes a clear error of law.

  Defendants make much of the distinction between a condition of payment and a condition of participation. They argue that the regulations at issue are labeled "conditions of coverage" within the Medicare regulations, which the Court should have interpreted as being synonymous with a condition of participation, and therefore should not have found that the statutes could form

---

[5] On November 16, 2015, Defendants submitted a Notice of Supplemental Authority in support of their motion. (ECF No. 68.) In that motion, Defendants called two cases to the attention of this Court as evidence that the Court committed an error of law: *U.S. ex rel. Troxler v. Warren Clinic, Inc*., 2015 WL 6500683 (10th Cir. Oct. 28, 2015) and *U.S. ex rel. Prather v. Brookdale Senior Living Communities, Inc*., 2015 WL 6812581 (M.D. Tenn. Nov. 5, 2015). (ECF No. 68 at 2.) Because neither of these cases represent Ninth Circuit law and therefore these cases are not binding precedent within this district, the Court does not consider those cases in reaching its decision. Also for that reason, the Court does not consider Plaintiffs' opposition to Defendants' supplemental authority, submitted to this Court on November 25, 2015. (ECF No. 71.)

10

a basis for an FCA claim. (ECF No. 46-1 at 11.) Defendants further argue that the underlying regulations do not expressly condition payment on compliance with the regulations and therefore cannot form the basis of an FCA claim. (ECF No. 46-1 at 11.). While the Court agrees that Defendants' present a viable legal alternative to the Court's analysis, it remains that the Ninth Circuit has not adopted the bright line payment/participation distinction that Defendants advocate, nor does the Ninth Circuit require express payment conditions within the underlying regulation.

Instead, the Ninth Circuit has instructed courts to focus on whether the underlying statutes are material. A false certification claim requires four elements: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 997 (9th Cir. 2010) (citing *Hendow*, 461 F.3d at 1174). "To establish the materiality element, 'the false statement or course of conduct must be material to the government's decision to pay out moneys to the claimant.'" *Id*. (quoting *Hendow*, 461 F.3d at 1172). In analyzing how to determine if a statute is "material," the court in *Ebeid* indicated that there is no strict requirement that the statute "expressly condition payment on compliance." *Id*. (quoting *Hendow*, 461 F.3d at 1177).[6] Instead, it is only one aspect the Court should consider when determining if the underlying regulation is material within the requirements of the FCA. *Maa v. Ostroff*, No. 12-CV-00200-JCS, 2013 WL 1703377, at *18 (N.D. Cal. Apr. 19, 2013) (citing *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d at 997).

Here, Plaintiffs rely on 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) as the regulations underlying their FCA claim. (ECF No. 23.) Both 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) fall within Subpart C of Section 416, "Specific Conditions of Coverage" ("Subpart C"). Defendants seek to end the Court's inquiry there, arguing that these regulations are conditions of coverage, not payment, and that the regulations themselves do not expressly reference payment.

---

[6] Defendants argue that *Ebeid* adopted the payment/participation distinction and found that the underlying statute must expressly condition payment on compliance. (ECF No. 46-1 at 8.) However, a reading of *Ebeid* indicates this is not the case. In fact, *Ebeid* specifically declined to reach the issue of whether the Ninth Circuit would adopt the Second Circuit's interpretation of the payment/participation distinction in the Medicare context. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 n.3 (9th Cir. 2010).

(ECF No. 46-1 at 11.). However, under the precedent set by the Ninth Circuit, Defendants' conclusions are insufficient for dismissal. Instead, the Court analyzes their role in an overall regulatory framework of 42 CFR § 416 ("Part 416"), the portion of Medicare Part B covering Ambulatory Surgical Services. Subpart C of Part 416 provides thirteen different conditions of coverage, including everything from a requirement that the organization have a method to "develop, implement and maintain an ongoing, data-driven quality assessment and performance improvement program" to the requirement that the organization maintain a facility safe from fire. *See* 42 CFR § 416.43 and 42 CFR § 416.44(b). However, 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) are unique within Subpart C because they both require the organization to provide an exam. 42 C.F.R. § 416.42(a) requires, "[a] physician must examine the patient immediately before surgery to evaluate the risk of anesthesia and of the procedure to be performed" and, following surgery, "each patient must be evaluated by a physician or by an anesthetist … for proper anesthesia recovery." 42 C.F.R. § 416.52(a) requires that "each patient must have a comprehensive medical history and physical assessment completed" prior to surgery and that the pre-surgical assessment must include specific requirements like "an updated medical record entry documenting an examination for any changes in the patient's condition since completion of the most recently documented medical history and physical assessment, including documentation of any allergies to drugs and biological." These are affirmative, required medical exams, rather than simply standards of practices prescribed elsewhere within Subpart C.

Moreover, Section 416 does not only put forth "[t]he conditions that an ASC must meet in order to participate in the Medicare program," but also, "[t]he conditions for Medicare payment for facility services." 42 C.F.R. § 416.1. In fact, 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) can be read in conjunction with Subpart F of Section 416 ("Subpart F"), which sets forth "[t]he scope of ASC services and the criteria for determining the covered surgical procedures for which Medicare provides payment for the associated facility services and covered ancillary services." 42 C.F.R. § 416.160. Defendants make no argument that the services required under 42 C.F.R. § 416.42(a) and 42 C.F.R. § 416.52(a) are not subject to the payment requirements covered in Subpart F.

Most importantly, these same physician-provided services are specifically listed as conditions for payment in other places within the Medicare regulations. *See* 42 C.F.R. § 415.110(a)(1)(i) ("Medicare pays for the physician's medical direction of anesthesia services … if each of the services meets … the following additional conditions: (1) For each patient, the physician— (i) Performs a pre-anesthetic examination and evaluation.") and 42 C.F.R. § 415.110(b) ("The physician alone inclusively documents in the patient's medical record that the conditions set forth in paragraph (a)(1) of this section have been satisfied…."). Because the Ninth Circuit has instructed the district courts to adopt a holistic inquiry into whether the regulations underlying an FCA claim are essential to the payment of government funds, the Court cannot conclude that these regulations are not a *sine qua non* of receipt of government funding for the purposes of this motion to dismiss. *U.S. ex rel. Hendow*, 461 F.3d at 1172 (internal citations omitted). Therefore, the Court finds no grounds for reconsideration under this argument.

         ii. *Application of Rule 9(b)*

Defendants further allege that the Court failed to apply the Ninth Circuit pleading standard for an FCA claim under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). The Court addressed this argument in its Order, stating that the Plaintiffs need only provide "enough detail to give [Defendants] notice of particular misconduct which is alleged to constitute the fraud charged." (ECF No. 41 at 6 (quoting *Ebeid*, 616 F.3d at 999).) The Court explained that Plaintiffs provided the necessary "who, what, when, where, and how" of incidents involving specific patients, as well as Plaintiffs' observations that the Defendants did not comply with the regulations with respect to those patients but submitted claims on behalf of those patients. (ECF No. 41 at 7.) Defendants protest this reasoning in their motion by reciting the same arguments and case law that they assert in their motion to dismiss. (ECF No. 46-1 at 13–15.) Such an argument is insufficient for the Court's reconsideration. Simply put, "under Rule 9(b), … it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998–99 (internal citations omitted). The Court found that Plaintiffs met this requirement and Defendants failed to put forth any viable argument that the Court's decision represented a clear error of law. Therefore,

1  Defendants' motion for reconsideration is denied.

2                  B.     <u>Interlocutory Appeal</u>

3          In the alternative to seeking this Court's reconsideration of its Order, Defendants seek

4  interlocutory appeal on the following issues: (i) Was this Court permitted to consider factual

5  allegations that the defendants falsely certified compliance with CMS-855B even though these

6  allegations are not set forth in the Amended Complaint?; (ii) Is pleading false certification

7  through CMS-855B alone sufficient to confer FCA liability for future compliance with

8  regulations not mentioned in the certification and without any consideration of materiality?; and

9  (iii) May the relator avoid the heightened pleading requirements of Rule 9(b)?  (ECF No. 46-1 at

10 16.)  None of these questions present legal issues sufficient for certification of interlocutory

11 appeal.

12         This Court may certify an order for interlocutory appeal only in exceptional situations, as

13 defined by 28 U.S.C. § 1292(b).  *In re Cement Antitrust Litig*., 673 F.2d at 1026.  These

14 exceptional circumstances exist where the issue "involves [1] a controlling question of law as to

15 which there is [2] substantial ground for difference of opinion and that [3] an immediate appeal

16 from the order may materially advance the ultimate termination of the litigation." *James v. Price*

17 *Stern Sloan, Inc*., 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) (citing 28 U.S.C. § 1292(b)).)  A court

18 must find that each of these elements exists or the question of law should not be certified and the

19 certification is jurisdictionally defective.  *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir.

20 2010)

21                 *i.*     *Question One*

22         Defendants seek certification for interlocutory appeal on the following question:

23 > In denying Defendants' Motion to Dismiss, was the district court permitted to consider factual allegations that the defendants falsely certified compliance with Section 15(a)(3) of the Medicare Enrollment Application Form CMS-855B even though these allegations are not set forth in the Amended Complaint?

26 (ECF No. 46-1 at 16.)  In posing this question, Defendants essentially rehash their argument that

27 the Court should not have considered CMS-855B as a source of Defendants' implied certification

28 because Plaintiffs failed to put forth that argument and failed to attach the CMS-855B with its

14

1  FAC.

2  With respect to this question, the Court finds that Defendants fail to present a substantial
3  ground for difference of opinion, as required by the Ninth Circuit.  "[A] substantial ground for
4  difference of opinion exists where the circuits are in dispute on the question and the court of
5  appeals of the circuit has not spoken on the point." *Couch v. Telescope Inc.*, 611 F.3d 629, 633
6  (9th Cir. 2010) (internal citations omitted).  Here, the Ninth Circuit has made clear that "a court
7  may consider a writing referenced in a complaint but not explicitly incorporated therein if the
8  complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*,
9  476 F.3d 756, 763 (9th Cir. 2007).  In fact, Defendants do not point to any difference of opinion
10 on this issue, except their own dislike of the Court's application of the facts of this case to the
11 established law.

12 As discussed in Section III.A.i.a., *supra*, Plaintiffs state in their FAC that Defendants
13 entered into an agreement as a Medicare provider by executing "CMS Form 855B." (ECF No. 23
14 at ¶ 23.)  Not only do Plaintiffs reference the form, but they go into detail regarding the series of
15 express provisions found within the form to which Defendants bound themselves in signing the
16 document.  (ECF No. 23 at ¶¶ 37–39, 80.)  The Court found this discussion of CMS-855B to be
17 sufficient to permit the Court to incorporate and review the document itself.  "A party's strong
18 disagreement with the Court's ruling is not sufficient for there to be a substantial ground for
19 difference.  That settled law might be applied differently does not establish a substantial ground
20 for difference of opinion." *Couch*, 611 F.3d at 633.  For these reasons, the Court cannot certify
21 interlocutory appeal on this question.

22 *ii.  Question Two*

23 Defendants seek certification for interlocutory appeal on the following question:

24 > Is pleading the Medicare Enrollment Application Form CMS-855B
> alone, which every Medicare provider must sign and submit for
25 > eligibility to participate as a Medicare provider, sufficient to confer
> FCA liability for future compliance with regulations not mentioned
26 > in the certification and without any consideration of materiality?

27 (ECF No. 46-1 at 16.)  Here again, the Court finds that Defendants have failed to present a
28 substantial ground for difference of opinion to allow certification of this question for interlocutory

15

appeal. "[A] substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point…. However, … just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (internal citations omitted). Applying this standard, the Court denies Defendants' motion for certification of interlocutory appeal on several grounds.

First, Defendants have framed their question too narrowly. Defendants seek a ruling from the Ninth Circuit on whether Form CMS-855B may form the basis of an implied certification FCA claim. (ECF No. 46-1 at 16.) However, Defendants present no case law indicating that there is a dispute between circuit courts or district courts within the Ninth Circuit with respect to CMS-855B. Therefore, the Court cannot find that a ruling as to CMS-855B would resolve a substantially disputed question of law within the Ninth Circuit.

Second, even if the Court chose to certify on the implied issue underlying Defendants' question—whether the Ninth Circuit approves of catch-all certifications—there still is not a substantial ground for difference of opinion on this issue because the Ninth Circuit has indicated that it intends for the analysis to focus on materiality, not on certification. In *Ebeid*, the Ninth Circuit conducted a detailed analysis of its requirements for pleading an implied certification FCA claim. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 996–97 (9th Cir. 2010). The focus of the Ninth Circuit's inquiry was materiality. *Id*. at 997. With respect to the type of certification that could support an FCA claim, the Ninth Circuit seems to be intentionally unrestrictive. *Id*. In fact, the Ninth Circuit said only, "the term 'certification' had no special significance," indicating that the form of the certification itself should not be the focus of the inquiry. *Id*. The analysis in *Ebeid* further indicates that the format and content of the certification itself is not a significant legal question in the overall assessment of an FCA claim. *Id*. If anything, it is a threshold issue, not a bright line for automatic dismissal of FCA claims.

Moreover, the decision in *Ebeid* also recognized that the first court to apply the implied false certification doctrine did so on the basis of a signed "Statement of Cooperation," stating that

16

1  the defendants agreement to comply with "the program's requirements for continuing eligibility,"
2  a phrasing just as ambiguous as the CMS-855B, if not more so. *Id.* at 996 (citing *Ab-Tech Const.,*
3  *Inc. v. United States*, 31 Fed. Cl. 429, 431 (1994) *aff'd sub nom*. *Ab-Tech Const. v. United States*,
4  57 F.3d 1084 (Fed. Cir. 1995)). The Court's acknowledgment of that certification as sufficient
5  indicates to this Court that there is no great concern or dispute regarding the form of the
6  certification.

7  In addition, while Defendants cite to one case, *USA v. Walgreen Co.*, No. 13-cv-08473-
8  BRO (C.D. Cal. January 2, 2015), wherein the court states that the Ninth Circuit has not
9  addressed the issue, the Court has found cases in which California district courts have reviewed
10 FCA claims based on similar "catch-all" certifications and the appropriateness of the underlying
11 certification in such cases did not warrant discussion by the courts. *See, e.g., Maa v. Ostroff*, No.
12 12-CV-00200-JCS, 2013 WL 1703377, at *16 (N.D. Cal. Apr. 19, 2013); *U.S. ex rel. Modglin v.*
13 *DJO Glob. Inc*., 48 F. Supp. 3d 1362, 1403 (C.D. Cal. 2014). These decisions indicate that, while
14 there is an ambiguity within district courts of the Ninth Circuit on this point, it is not tantamount
15 to a substantial ground for difference of opinion. For that reason, the Court must deny
16 certification.

17 Finally, the last clause of Defendants' question confusingly adds the issue of whether
18 CMS-855B is sufficient "without any consideration of materiality." (ECF No. 46-1 at 16.) The
19 Court can only assume that Defendants felt the Court's discussion of materiality in its Order was
20 insufficient. However, Defendants should be aware that a court's decision not to address every
21 detail of every argument introduced by each party does not mean that no legal basis exists for a
22 court's decision. The Court's analysis of materiality in Section III.A.i.b., *supra*, should indicate
23 to Defendants that a reasoned legal basis exists for the Court's finding that Plaintiffs meet the
24 materiality requirement. Moreover, even if the Court had failed to address the materiality
25 requirement in its entirety, that omission would still not provide grounds for certification. There
26 is no substantial ground for difference of opinion within the Ninth Circuit with respect to the
27 materiality requirement. *Ebeid* has made clear that the theory of implied false certification rests
28 on the concept of materiality, perhaps more than any other element of the claim. *Ebeid ex rel.*

*U.S. v. Lungwitz*, 616 F.3d 993, 997 (9th Cir. 2010). Defendants' analysis provides no grounds for certification of its second question.

### iii. Question Three

Finally, Defendants seek certification for interlocutory appeal on a third question:

> May a realtor avoid the heightened pleading requirements of Rule 9(b) when relator has failed to plead representative examples showing, or reliable indicia to support a strong inference that a defendant actually submitted false claims for reimbursement to federal health programs, and undertake discovery in an effort to remedy this deficiency and bolster a complaint?

(ECF No. 46-1 at 16.) As with their first question, Defendants essentially restate their objection to this Court's interpretation of the heightened pleading requirements of Rule 9(b). As the Ninth Circuit has stated, "under Rule 9(b), … it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998–99 (internal citations omitted). The Court found in its Order, and again in its discussion of Defendants' motion for reconsideration in Section II.a.ii., *supra*, that Plaintiffs pled sufficient facts to support the heightened pleading standard as defined by the Ninth Circuit. Defendants have presented no substantial ground for difference of opinion on this point. Again, "[a] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference. That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633. Therefore, the Court declines to grant certification for interlocutory appeal on this question.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendants' Motion for Reconsideration or, in the alternative, Interlocutory Appeal. (ECF No. 46.)

IT IS SO ORDERED.

Dated: January 22, 2016

Troy L. Nunley
United States District Judge